## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **LOUIS MBANWI ACHA** | **CIVIL ACTION NO. 20-1696** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CHAD WOLF** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Petitioner Louis Mbanwi Acha, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, and moves for a temporary restraining order. [doc. #s 1, 3]. He seeks release from confinement, claiming (1) he is suffering prolonged post-deportation detention; (2) his prolonged detention amounts to punishment in violation of the Eighth Amendment; and (3) he is vulnerable to a virus, Covid-19. For reasons below, the Court should deny the petition and motion.

## Background

Petitioner is a citizen of Cameroon, and he is detained at Jackson Parish Correctional Center ("JPCC"). [doc. # 9-1, p. 1]. On January 23, 2020, an immigration judge ordered Petitioner removed. [doc. # 3, p. 14]. On June 29, 2020, the Board of Immigration Appeals ("BIA") denied Petitioner's appeal. *Id.*

Petitioner filed this Petition on approximately December 24, 2020, claiming: (1) that he is enduring prolonged detention and (2) that his detention is exposing him to Covid-19. [doc. # 1, pp. 4, 6]. He seeks immediate release from detention "on [his] own recognizance[,]" or in the alternative, release on parole, bond, or other reasonable conditions of supervision. *Id.* at 5.

On approximately January 4, 2021, Petitioner moved for a temporary restraining order, seeking immediate release and maintaining that he is "highly vulnerable to serious injury or death" due to Covid-19. [doc. # 3, pp. 1, 10-11, 47]. The majority of his motion is dedicated to release because of his conditions of confinement and exposure to Covid-19. But he also seeks release under *Zadvydas v. Davis*, 533 U.S. 678 (2001), claiming that his detention is "indefinite." *Id.* at 15. Further, he seeks declaratory and habeas relief under the Rehabilitation Act. *Id.* at 45.

Respondent Chad Wolf responded on January 14, 2021. [doc. # 9]. Respondent argues: (1) that ICE obtained a travel document for Petitioner and that Petitioner's removal is scheduled in "early February" 2021; (2) that a habeas petition "is not the proper vehicle for [Petitioner's] request for release due to his conditions of his confinement"; and (3) even if Petitioner's claim is cognizable, Petitioner has not met his burden for the extraordinary remedy he seeks. [doc. #s 9, p. 2; 11, p. 2].

## Law and Analysis

### I. Conditions of Confinement

**A. Habeas Corpus is Unavailable**

Petitioner alleges that he is "highly vulnerable to serious injury or death if [he] contract[s] Covid-19 . . . ."[1] [doc. # 3, p. 1]. He alleges that officials at JPCC are failing to adhere to CDC guidelines for increased social distancing, masks, hygiene, testing, and restricting transfers between facilities. *Id.* He alleges that he is confined in close proximity to others without adequate sanitation or protection. *Id.* at 3. He alleges:

> [H]e is at risk of serious injury and death because of Respondents' reckless choices and the conditions at JPCC. Respondents' failure to follow public health guidance endangers the lives of those they have chosen to detain. The only way to effectively inhibit the spread of the coronavirus and to protect Petitioner and

---

[1] Petitioner also refers to Covid-19 as the "coronavirus."

2

>others from the risks posed by Covid-19 infection is to immediately release Petitioner, so that he can actually adhere to the guidance from public health experts and take the necessary steps to protect himself.

*Id.* at 10.

Petitioner maintains that he "is 24 years old and suffers from an unknown etiologic disorder (chest pains)." *Id.* at 12. He also suffers from asthma. *Id.* at 18, 41. "He is therefore at high risk of severe illness or death if he contracts Covid-19." *Id.* at 18. Petitioner also alleges that he already contracted Covid-19 and "has experienced symptoms[.]" *Id.* at 41.

Plainly, Petitioner challenges the conditions of his confinement. "Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose. While it is correctly alluded to as the Great Writ, it cannot be utilized as . . . a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

"Allegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007). "A § 2241 habeas petition is the proper procedural vehicle for challenging an action that 'directly implicates the duration of' a prisoner's confinement. *Davis v. Fechtel*, 150 F.3d 486, 487, 490 (5th Cir. 1998). It is not, however, the proper procedural vehicle for claims . . . regarding the conditions of confinement." *Boyle v. Wilson*, 814 F. App'x 881, 882 (5th Cir. 2020).[2]

---

[2] See *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[A] habeas petition 'is the proper vehicle to seek release from custody,' while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens* for a federal prisoner is 'the proper vehicle to attack

In *Moore v. King*, No. 08-60164, 2009 WL 122555, at *1 (5th Cir. Jan. 20, 2009), for instance, the petitioner sought habeas relief, challenging the conditions of his confinement. The court affirmed the dismissal of his claim, citing *Pierre* for the rule that habeas is simply not available.[3]

Here, Petitioner's conditions-of-confinement claim is unrelated to the cause of his detention. The Court should dismiss it.

### B. *Cheek v. Warden*

*Cheek v. Warden of Fed. Med. Ctr.*, 2020 WL 6938364, at *1 (5th Cir. Nov. 24, 2020), does not alter the conclusion above. In the unpublished opinion, a "federal prisoner brought a *habeas* application pursuant to 28 U.S.C. § 2241[,]" seeking release "to home confinement due to the global pandemic created by COVID-19." The court first observed, consistent with the authority above: "Section 2241 applications are used to challenge the *length* of a prisoner's sentence. If the prisoner wishes to challenge the *conditions* of his confinement, that claim is brought under 42 U.S.C. § 1983." *Id.* (citations omitted).

The court then found that the "request for release to home confinement in the context of a global pandemic was properly *brought* as an application for a writ of *habeas corpus* under Section 2241 *because a favorable ruling from the district court would accelerate his release*."

---

unconstitutional conditions of confinement and prison procedures.'") (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)).

[3] See *Mora v. Warden, Fed. Corr. Complex, Yazoo City Medium*, 480 F. App'x 779, 780 (5th Cir. 2012) (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release."); *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009) ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree."); *McBarron v. Jeter*, 243 F. App'x 857, 857 (5th Cir. 2007); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

4

*Id.* (italics added). This conclusion, though, is misleading. The court held that because release to home confinement would accelerate the petitioner's release, the request for home confinement constituted a request for habeas corpus. It did not hold that the district court possessed authority to grant habeas corpus.

In fact, the court stated explicitly that "the pandemic did not create judicial authority to grant home confinement[,]" that "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release[,]" and that "[i]t is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic." *Id.*

Here, Petitioner definitively seeks habeas corpus relief. He "brought" his request "properly,"—especially considering that a request for release would be improper under Section 1983 and *Bivens*—but the relief he seeks is unavailable.

*Cheek* concluded that the petitioner could not obtain the specific relief he sought under 18 U.S.C. § 3624(c)(2), reasoning that the Bureau of Prisons ("BOP") and the Attorney General "have the discretion to consider the appropriateness of home release based on certain statutory and discretionary factors." *Id.* But then the court hesitated. Leaving the question unresolved, *Cheek* hypothesized that "vested authority in the BOP *might* not wholly eliminate a court's role in such decisions." With a bit more conviction, *Cheek* then cited *Melot*, a Fifth Circuit proceeding in which a prisoner sought participation in the Elderly Offender Home Detention Program, for the proposition that "[a] challenge to the BOP's or Attorney General's interpretation of the statute *would* make judicial review appropriate." *Id.* (italics added) (citing *Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020)). But *Cheek* failed to mention that in *Melot*,

5

970 F.3d at 599, the court clearly stated that "Melot's claim involves his conditions of confinement . . . [and] is not cognizable under § 2241[.]"[4]

Regardless, the petitioner in *Cheek* did "not indicate the extent to which the BOP actually considered [him] for home-confinement release[,]" causing the court to conclude:

> Without a denial from the BOP, there is nothing for us to review. Cheek presents no indication that the BOP denied him or others, appropriately or otherwise, a request for home confinement. Instead, Cheek seems to challenge the BOP's silence, without any specific adverse decision. . . . [W]e must have *some* decision to review under *Melot*.
>
> . . . .
>
> We find that Cheek's claims do sound in *habeas* but that he has not presented an administrative decision that this court can review.

*Id.*

Here, Petitioner does not seek release under 18 U.S.C. § 3624. Even if he did, he neither presents an administrative decision for review nor challenges the Attorney General or BOP's statutory interpretation of Section 3624. Further, it is unclear if Section 3624(c) applies to ICE detention. It provides, "The authority under this subsection may be used to place a prisoner in

---

[4] See *Francois v. Garcia*, 2020 WL 7868101, at *3 (S.D. Tex. Dec. 24, 2020) ("*Cheek* seems to be in contravention of an earlier, but published, Fifth Circuit opinion from this year, *Melot v. Bergami*, 970 F.3d 596 (5th Cir. 2020)."); *Ndudzi v. Perez*, 2020 WL 7974296, at *5 (S.D. Tex. Dec. 24, 2020) ("*Cheek* offered little by way of analysis and did not discuss how, if at all, finding subject matter jurisdiction over conditions of confinement claims raised in habeas comported with this circuit's controlling precedent. . . . *Cheek* is difficult to reconcile with Fifth Circuit precedent concluding that a prisoner demonstrating Eighth Amendment violations involving cruel and unusual punishment 'is still not entitled to release from prison.' *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979); *see also Schipke v. Van Buren*, 239 F. App'x 85 (5th Cir. 2007) (per curiam) ("Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration.") (quoting *Hanberry*, 592 F.2d at 249)). If, as *Hanberry* instructs, Eighth Amendment violations do not warrant release from prison, the Court is skeptical that it has subject matter jurisdiction over Petitioner's habeas petition—through which she seeks release from immigration detention for analogous violations she has raised under the Fifth Amendment.").

home confinement for the shorter of 10 percent of the term of *imprisonment* of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624 (italics added). Reviewing Section 3624(e), *United States v. Garcia-Rodriguez*, 640 F.3d 129, 132 (5th Cir. 2011), found that "a straightforward reading of the applicable statute shows that administrative detention by ICE is not the same as imprisonment by the BOP."

**II. Medical Care**

Petitioner suggested in both his Petition and at a January 19, 2021 hearing that Respondent is or has not provided constitutionally adequate medical care. Even assuming the Court could award the relief he seeks via habeas corpus petition for this ostensible claim,[5] or even assuming Petitioner filed this claim in a separate civil rights action, Petitioner is not entitled to relief.

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care

---

[5] See *Mora*, 480 F. App'x at 780 (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release."); *Figueroa,* 347 F. App'x at 50 ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree.").

claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Petitioner contracted Covid-19 and "suffers from [an] unknown etiologic disorder (chest pains)[,]" asthma, and Thrombocytopenia. [doc. #s 3, pp. 12, 18, 41; 8, p. 1]. His Thrombocytopenia "means that he suffers from low platelet count which means his blood has low clotting levels." [doc. # 8, p. 1].

Petitioner, however, has received care. In July 2019, a physician evaluated Petitioner and prescribed medication. [doc. # 8-1, p. 10]. On December 9, 2019, a physician evaluated Plaintiff and prescribed medication. *Id.* at 14. On December 11, 2019, a physician evaluated

Petitioner's Thrombocytopenia and other symptoms. *Id.* at 10. On December 16, 2019, a physician evaluated Petitioner, noted that he had dermatitis and Thrombocytopenia, and prescribed medication. *Id.*

On February 19, 2020, a nurse noted that Petitioner should "repeat CBC." *Id.* at 14. On February 22 or 24, 2020, a laboratory examined Petitioner's blood and found that his platelet count was "chronically low." *Id.* at 11. On February 24, 2020, a physician diagnosed Petitioner with "chronic Thrombocytopenia" and referred him to hematology. *Id.*

On March 5, 2020, a nurse discussed Petitioner's low platelet count with him and referred him to "hema/oncology." *Id.* at 9. On April 15, 2020, a nurse evaluated Petitioner's injured back and skin symptoms, provided treatment instructions, prescribed medication, and instructed him to return if his symptoms persisted or worsened. *Id.* at 9, 14. On April 30, 2020, a nurse prescribed nasal spray. *Id.* at 14. On June 5, 2020, a nurse reviewed Petitioner's laboratory results and noted that she was awaiting consultation from hematology. *Id.*

On June 30, 2020, a nurse evaluated Petitioner and treated his asthma. *Id.* at 5. On July 14, 2020, the nurse evaluated Petitioner again, noting that he felt better and was using his inhaler. *Id.*

Petitioner received care at Jackson Parish Hospital Emergency Department after he contracted Covid-19. *Id.* at 2. On August 25, 2020, a nurse prescribed several medications for his Covid-19 symptoms and noted that officials should prepare to transfer him to the emergency room if a "provider deems necessary." *Id.* at 6. On August 31, 2020, a nurse evaluated Petitioner, noted that he was "feeling ok," recorded his symptoms, and instructed him to continue "droplet precautions" and "medications per Covid-19 protocol." *Id.* at 7. On September 2, 2020, a nurse evaluated Petitioner, noted that he was "feeling fine," recorded his symptoms, and

9

instructed him to continue treatment. *Id.* at 8. On September 10, 2020, a physician evaluated Petitioner, prescribed medication, and provided follow-up instructions and education materials. *Id.* at 2, 4.

On October 14, 2020, a nurse evaluated Petitioner and prescribed treatment for his asthma and Covid-19 symptoms. [doc. # 13-1, p. 2]. On November 18, 2020, a nurse reviewed Petitioner's records, recorded his symptoms, instructed him to return in two weeks to see a physician, and referred him to surgery. *Id.* On December 31, 2020, a physician evaluated Petitioner and prescribed treatment. *Id.* at 3. On January 12, 2021, a physician evaluated Petitioner once more. *Id.* at 4.

From the above, the undersigned concludes that Petitioner does not plead or establish that any person or entity exhibited deliberate indifference to his medical needs. At best, he simply disagrees with, or is dissatisfied with, the treatment he did receive. See *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."). His disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference. See *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).[6]

The Court should dismiss this claim.

---

[6] See also *Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference.").

**III. Overstay in Detention**

Petitioner claims that he "is entitled to habeas relief under *Zadvydas*" because his detention is "indefinite" and the "path ahead" is unforeseeable. [doc. # 3, p. 15].

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[7] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future'

---

[7] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

11

conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Respondent provides the declaration of Acting Assistant Field Office Director Quincy R. Hodges, III, who declares that Enforcement and Removal Operations has obtained "travel authorization from the Cameroonian consulate." [doc. # 9-1]. He adds that Petitioner "is scheduled for a flight to Cameroon on a date in early February 2021." *Id.*

Respondent also attaches a travel document for Petitioner. [doc. # 14]. The document states in part, "THE BEARER OF THIS TRAVEL DOCUMENT IS BEING ESCORTED/DEPORTED TO CAMEROON." *Id.* It is valid until April 21, 2021. *Id.* Petitioner does not dispute the declaration or evidence.

Respondent contends therefore that "there is a significant likelihood of removal in the future . . . ." [doc. # 9, p. 9]. According to Respondent, "This is not an anomaly, because over the past three years the Department of Homeland Security has removed 202 individuals to Cameroon, including 54 in Fiscal Year 2020." *Id.*

The undersigned finds that because ICE secured a travel document, because Petitioner is scheduled for removal in early February 2021, and because DHS has removed others to

Cameroon relatively recently, there is a significant likelihood of removal in the reasonably foreseeable future.

Accordingly, Petitioner's detention remains reasonable, and the Court should dismiss this claim. Petitioner may re-urge his claim if he develops good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not likely in the reasonably foreseeable future.[8]

## IV. Rehabilitation Act

Petitioner seeks relief under the Rehabilitation Act, claiming that his "Medical conditions qualify as disabilities." [doc. # 3, p. 12].

Courts have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them.[9] Even assuming a federal alien-detainee could obtain relief under the Rehabilitation Act using a habeas corpus petition, Petitioner does not plead or establish that he is entitled to relief. To establish a prima facie case under the Rehabilitation Act, a plaintiff must show: "(1) that he is a qualified individual . . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public

---

[8] See. e.g., *Adefemi v. Gonzales*, 228 F. App'x 415, 416–17 (5th Cir. 2007).

[9] *See, e.g., Toure v. Huron*, 2021 WL 75698, at *5 (W.D. Tex. Jan. 8, 2021); *Roark v. Flanery*, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Hickman v. Mercado*, 2014 WL 66778, at *7 (N.D. Tex. Jan. 8, 2014) (finding that an action against federal government officials in their official capacity is an action against the United States and its agencies who are, therefore, shielded by sovereign immunity); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding that Rehabilitation Act does not apply to federal prisons); *Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (holding that an immigration detainee could not bring a Rehabilitation Act claim against Immigration and Naturalization Service ("INS"), the predecessor to ICE); *see also Inko-Tariah v. Lappin*, 2009 WL 8652932, at *1 (E.D.N.C. Apr. 1, 2009), *aff'd*, 346 F. App'x 915 (4th Cir. 2009); *Sandler v. Anderson*, 2008 WL 2610130, at *2 (W.D. Mo. July 2, 2008).

entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

Petitioner claims that the "removal process is a program which is in part administered by DHS, and Petitioner is entitled to participate in the removal process." [doc. # 3, p. 45]. He adds: "By failing to take account of Petitioner's special vulnerability to severe illness or death if [he] contracts Covid-19 and by exposing [him] to a heightened risk of contracting Covid-19, Respondents are intentionally preventing Petitioner from participating in the removal process as well as the services, programs, and activities within JPCC, by reason of [his] disabilities." *Id.* He also claims, "Respondents' ongoing detention of Petitioner constitutes disability discrimination in violation of the Rehabilitation Act because it is either disparate treatment of Petitioner, or at the very least has a disparate impact on him, based on [his] disabilities, and because Respondents have failed to provide Petitioner with reasonable accommodations." *Id.*

With respect to the first claim above, and even assuming that the removal process is a program under the Rehabilitation Act, it is undisputed that Petitioner is participating in that process now. As above, Respondent has secured a travel document for Petitioner and expects to remove him in early February 2020. Moreover, the claim is contradictory: Petitioner desires inclusion in the removal process, but he does not ask the Court to remove him. Instead, he seeks immediate release into the United States.

Petitioner's second claim is entirely conclusory. He does not establish that Respondent refuses to remove or release him *because* of his alleged disability. Rather, the Government initially detained Petitioner because he "applied for admission to the United States at the San Ysidro, California, Port of Entry without being in possession of a valid document to enter the

United States." [doc. # 9-1, p. 1]. On October 16, 2020, the Government continued to detain him, reasoning that his removal was "very likely," that he posed "a significant risk of flight if released," and that there were "no other urgent humanitarian, medical or custodial issues present . . . ." [doc. # 9-3, p. 1]. Petitioner does not dispute this.

The Court should deny these Rehabilitation Act claims.

## Conclusion

For reasons above, **IT IS RECOMMENDED** that Petitioner Louis Mbanwi Acha's Rehabilitation Act claims, conditions-of-confinement claims, and medical care claims be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Petitioner's claim of prolonged detention be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-urge the claim if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not likely in the reasonably foreseeable future.

**IT IS FURTHER RECOMMENDED** that Petitioner's motion for temporary restraining order, [doc. # 3], be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

**Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of January, 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE